[No. 857.   Decided April 29, 1893.]

F. L. LESLIE, *Appellant*, v. W. W. WILSHIRE *et al.*, *Respondents*.

CORPORATIONS — INSOLVENCY — PREFERRING CREDITORS — UNAUTHORIZED CONTRACTS — ESTOPPEL.

A chattel mortgage given by a dairy association cannot be held void on the ground that it is a preference of creditors by an insolvent corporation, when the evidence shows that the association had not enough money on hand to pay all of its indebtedness, but that its business was profitable; and that the mortgage was given for the purpose of inducing the mortgagee to continue to supply milk to the association, in order that its business might be carried on.

Although a contract of a corporation may not have been properly authorized by its board of trustees, yet, where the corporation continues to receive the benefits accruing from such contract, it is estopped to deny the validity thereof.

*Appeal from Superior Court, King County.*

*Burleigh, Gamble & Burleigh,* for appellant.
*George E. de Steiguer,* for respondent Wilshire.

The opinion of the court was delivered by

SCOTT, J.— In September, 1891, certain persons, then severally engaged in supplying milk to customers in the city of Seattle, organized a corporation known as the Seattle Dairy Association, for the purpose of joining their interests and continuing said business. Contracts were made with farmers who were producers of milk to furnish to the association a certain number of gallons of milk at a specified rate extending over a period of several months, or a year. Such a contract was made with Malcolm Mc-Dougall, the assignor of the appellant. Subsequently, the price of milk having fallen, the association desired to be relieved therefrom. McDougall consented to give up his contract upon condition that he should be paid for the milk he had already supplied, and that a part of the stock of such association (which, owing to a resolution to the effect that milk would be taken from stockholders only, he had taken to enable him to enter into the contract) should be repurchased by the association. After some negotiations, it being deemed to the advantage of the association by the persons managing its business that so large a supply of milk should not be cut off suddenly, it was agreed between the association and McDougall that he should accept security for the amount due, and should continue to furnish milk at reduced rates; and on the 10th of February, 1892, a note and chattel mortgage to secure the same were executed to him by the president and secretary of said association. The amount so secured was $1,700. This covered the existing indebtedness, and also such sum as would become due for milk for the remainder of the month

of February.   Thereupon McDougall continued to furnish
milk to the association, which it received during said
month of February.   The previous contract between Mc-
Dougall and the association was canceled and delivered up.

From the time of giving such mortgage up to the 24th
of March following, the association continued in business,
buying milk and selling the same to its customers.   At
that time attachment suits were brought by some of the
stockholders of the corporation, which resulted in closing
up its business.   Foreclosure proceedings upon the mort-
gage were instituted by plaintiff, to whom the same had
been assigned.   The court found that the association was
insolvent at the time the mortgage was executed, and that
it was given for the purpose of preferring a creditor, and
was void, and decreed that all the property of the associa-
tion should pass into the hands of a receiver, to be dis-
tributed equally among all the creditors, whereupon the
plaintiff appealed to this court.

The ground upon which the court rendered its decision
seems to have been the main point in controversy, although
it is contended that the mortgage was not properly ex-
ecuted.   Upon this point the court made no finding.   There
was no resolution of the board of trustees authorizing the
execution of the mortgage, but it fairly appears that a
majority of the trustees participated in giving it, and, after
a knowledge of its execution, the association continued to
receive the benefits of the contract secured thereby.   Sub-
sequently, at a meeting of a majority of the board of trus-
tees, the giving of said mortgage was expressly ratified.
It is contended that this meeting was irregular, because
the same had not been properly called.   However this may
be, the association is otherwise estopped from denying the
validity of the mortgage.   The manner in which it was
executed even seems to have been about as regular as were
its business transactions generally.   There is little or no

controversy as to the law applicable to the case, the contention being over the proof. After an examination of the evidence we do not think there is sufficient in the record to warrant the finding that the association was insolvent when the mortgage was given, and that it was given for the purpose of preferring McDougall's claims. The association was embarrassed to some extent, and had not enough money on hand to pay all of its indebtedness, but its business was then regarded as a profitable one, and its evident purpose at that time was to continue it, and the mortgage was given for the purpose of inducing McDougall to continue to supply milk to the association, in order that its business might be carried on. We think this is well established from the proofs. He had been paid up to the month preceding the giving of the mortgage.

We are satisfied that the judgment holding appellant's mortgage void is erroneous, and it is reversed to that extent, and the cause is remanded, with instructions to enter a decree giving said mortgage full force and effect.

DUNBAR, C. J., and HOYT and STILES, JJ., concur.

ANDERS, J., not sitting.